UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| HAGER HOWARD TRENT, JR., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19-CV-109-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, ) | **ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment [R. 8, 10]. The Plaintiff, Hager Howard Trent, Jr., exhausted his administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying his claim for disability insurance benefits. The Court, having reviewed the record and the parties' motions, will remand the Commissioner's decision for further proceedings consistent with this opinion.

I. **Procedural and Factual Background**

On September 23, 2016, Trent filed an application for a period of disability and disability insurance benefits, alleging he became disabled on September 23, 2016. [Administrative Record (AR) 177] His application was initially denied and again on reconsideration, after which he requested a hearing before an Administrative Law Judge (ALJ). [AR 223-31] The ALJ held a hearing on November 1, 2018 [AR 141-76] and subsequently issued an unfavorable decision on February 5, 2019, finding Trent was not disabled since September 23, 2016 [AR 123-34]. The Appeals Council denied his request for review [AR 1-6] and the ALJ's decision became the final

decision of the Commissioner. Trent then filed his Complaint against the Commissioner in this Court. [R. 1]

## II. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court cannot review the case de novo, resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To determine disability under the Social Security Act, the ALJ must conduct a five-step analysis. 20 C.F.R. § 404.1520.

1. First, plaintiff must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.

2. Second, plaintiff must show that he suffers from a "severe impairment" in order to warrant a finding of disability.

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

**III.   Analysis**

The ALJ followed the five-step evaluation process as required by SSA regulations. [AR 123-34]. At step one, the ALJ found Trent had not engaged in substantial gainful activity since September 23, 2016 (the alleged onset date). [AR 125] At step two, the ALJ found Trent had various "severe" physical impairments [*Id.*] However, the ALJ found that Trent's "depressive disorder/affective psychosis/major depressive disorder and anxiety" were "nonsevere." [AR 126-27] At step three, the ALJ determined Trent did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. [AR 127] The ALJ proceeded to step four and determined Trent's "residual functional capacity" (RFC)[1] finding that Trent could perform "sedentary work," with the following limitations:

> [He] can only occasionally push and pull with his upper extremities, and can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently reach overhead, handle, and finger bilaterally. The claimant must avoid concentrated exposure to extreme temperatures, humidity, pulmonary irritants, wetness, and vibration. The claimant cannot work around workplace hazards such as unprotected heights or heavy equipment.

---

[1] An individual's residual functional capacity is the most an individual can still do despite his or her impairment-related limitations. 20 CFR § 404.1545(a)(1).

[AR 128]

The RFC did not include any limitations due to mental impairments. Based on this RFC and the testimony of the vocational expert, the ALJ determined that Trent could not perform his previous occupations but could perform other jobs existing in the national economy; therefore, Trent was "not disabled." [AR 133-34]

### A. Mental Limitations and the RFC

On appeal, Trent argues that the ALJ relied on a psychological examination performed by a consultative psychologist (Dr. Ford) to find his depression and anxiety were non-severe but ignored treatment notes and diagnoses from two therapists that Trent started treating with *after* Dr. Ford's evaluation. [R. 8-1 at 3-4] The Court finds that the ALJ failed to consider or discuss this evidence at step two.

Dr. Ford examined Trent on December 28, 2016 and diagnosed him with "unspecified depressive disorder" and summarized that his ability to understand, remember, carry out instructions, and sustain attention and concentration "is not affected by the impairment," but his ability to tolerate stress and pressure of day-to-day employment, and capacity to respond appropriately to supervision from coworkers and pressures in a work setting "is affected by the impairment with slight limitations noted." [AR 584] Based on this 2016 examination, the ALJ concluded that Trent's anxiety and depression were non-severe. [AR 126]

After Trent was examined by Dr. Ford, he was referred by his treating physician (Dr. Breeding) to Sonji Adams, a Licensed Professional Clinical Counselor (LPCC), for a consultation on his depression. [AR 612] Ms. Adams found "severe depressive symptoms" and Trent was diagnosed with major depressive disorder, moderate. [AR 612-13] He started treatment with Sydney Cox, a Licensed Clinical Social Worker (LCSW), at the Mountain

4

Comprehensive Health Corporation [AR 618-21; 626-29] and then continued treatment with Wendy Hatton, a Licensed Professional Counselor Associate (LPCA) at Kentucky River Community Care, where he was diagnosed with major depressive disorder, recurrent, moderate. [AR 1103-04] The record shows that Trent was treated by Ms. Hatton from May 2017 until at least September 2018. [AR 81-95; 1103-17]

"An ALJ is bound to adhere to certain governing standards when assessing the medical evidence in support of a disability claim. Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination" on disability, including all "objective medical evidence," opinions, and diagnoses. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(3); 404.1512(b); 404.151). Trent argues that the ALJ ignored the evidence of his ongoing treatment for depression and anxiety when the ALJ determined these impairments were non-severe. Indeed, when discussing Trent's anxiety and depression at step two, the ALJ only discussed Dr. Ford's December 2016 consultative evaluation and did not mention or reference the diagnoses or treatment notes from the licensed counselors and social worker who treated Trent's depression and anxiety throughout 2017 and 2018. [AR 126]

Under SSA regulations, Trent's therapists' treatment notes, as well as any opinions regarding Trent's diagnosis and the severity of his depression and anxiety, are categorized as evidence from "other sources," which includes nurse practitioners, social workers, and therapists. *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014). Although the opinions and evidence from "other sources cannot establish the existence of a disability, their perspective should be given weight by the adjudicator and should be 'evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.'" *Id.*

(citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)). Despite this, in determining whether Trent's depression and anxiety were "severe," the ALJ relied exclusively on a consultative exam that predated the therapists' treatment notes and diagnoses, and the ALJ failed to discuss this evidence in his decision.[2]

The Commissioner acknowledges that, "[t]o be sure, Plaintiff outlines some supporting evidence including treatment notes post-dating Dr. Ford's report," but argues that even if the ALJ erred at step two in finding Trent's depression and anxiety to be non-severe, such error was harmless. [R. 10 at 9-10] The Commissioner is right that the severity determination at step two is "a de minimis hurdle in the disability determination process." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). It is meant to "screen out totally groundless claims." *Id.* (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). Nevertheless, when determining a claimant's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *5. Thus, so long as the ALJ considers *both* severe and non-severe impairments in later steps, the finding of non-severity at step two becomes harmless and "legally irrelevant." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) ("An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps.") (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The problem is, nowhere in the ALJ's decision does he consider Trent's non-severe depression and anxiety during later steps, as required by SSA regulations. The Commissioner

---

[2] The Court also notes that the ALJ failed to discuss or cite to the findings of two state agency psychologists, Dr. Bornstein and Dr. Perritt, anywhere in his opinion, although both reviews predated Trent's two years of therapy. [AR 186; 205-06]

6

admits that "the ALJ accepted Dr. Ford's opinion,"—including the mild limitations in Trent's ability to tolerate stress and the pressure of day-to-day employment, and his ability to respond appropriately to supervision and pressures in a work setting— "but did not include any mental limitations in the RFC finding." [R. 10 at 10] The ALJ clearly failed to consider Trent's non-severe impairments at later steps. While an error solely at step two does not mandate reversal, an ALJ must "consider[] all of a claimant's impairments in the remaining steps of the disability determination," including non-severe impairments. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citing *Maziarz*, 837 F.2d at 244). A failure to do so is reversible error. For example, in *Winn v. Commissioner*, the ALJ found at step two that the claimant's mental impairments were not severe, but because "the ALJ's step-four determination regarding [claimant's] RFC did not consider [his] mental impairments in a meaningful way," such error "require[d] reversal." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015).

Likewise, the ALJ here found Trent to have many "severe" physical impairments, but the ALJ failed to consider Trent's "non-severe" depression and anxiety in any meaningful way when determining his RFC. The ALJ did not incorporate even mild mental limitations into his RFC or discuss Dr. Ford's findings or Trent's therapists' treatment notes at step four. Therefore, "because [Trent's] mental impairments were not otherwise appropriately factored into [his] RFC," as required by SSA regulations, this is reversible error. *Rogers v. Berryhill*, No. CV 5:16-318-DCR, 2017 WL 2643410, at *8 (E.D. Ky. June 19, 2017).

**B. Treating Physician Rule**

Trent raises additional arguments on appeal. First, Trent argues that the ALJ erred by failing to assign great weight to Trent's treating physician's opinion (Dr. Breeding) and did not provide good reasons in accordance with the treating physician rule. [R. 8-1 at 8-12] An ALJ

must give the opinion of a treating source "controlling weight" if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion. *Wilson*, 378 F.3d at 544. The ALJ is also required to articulate "good reasons in [his] notice of determination or decision for the weight" given to the treating source's opinion. *Id.* An ALJ's decision denying benefits "must contain specific reasons" that "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)).

Trent cites to a one-page opinion from Dr. Breeding that assessed Trent's physical abilities.[3] [R. 8-1 at 8] The form consists almost entirely of checking boxes or circling words that indicate physical limitations or abilities. [AR 1118] Under the section titled "diagnosis," Dr. Breeding left the section blank. [*Id.*] In his written decision, the ALJ addressed Dr. Breeding's opinion and explained what limitations Dr. Breeding assessed. [AR 132] The ALJ chose to give this opinion "little weight" for two reasons: the opinion is "more limiting than supported by the medical evidence," and the opinion was "a simple check/circle form, with no rationale provided to support the opinion." [*Id.*]

The Court notes that the ALJ's first reason, without more, would likely be insufficient to satisfy the reason-giving requirement of the treating physician rule. *Friend v. Comm'r of Soc.*

---

[3] Under SSA regulations, a "medical opinion" is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

8

*Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.") On remand, the ALJ should clarify what specific evidence in the record is inconsistent with Dr. Breeding's opinion. The ALJ's second reason (that the opinion was "a simple check/circle form, with no rationale provided to support the opinion") would likely be enough to satisfy the good reasons requirement. *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (holding the ALJ gave "good reasons" for the weight given to treating physician's opinion where it was a "check-box form" and "the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence.") Because the Court is remanding the decision for the ALJ to consider Trent's depression and anxiety as part of his RFC, the Court will also require the ALJ to clarify his reasons for affording Dr. Breeding's opinion little weight.

**C. Functional Limitations**

Finally, Trent argues that the ALJ failed to accurately describe his abilities and limitations to the vocational expert during the November 1, 2018 hearing. [R. 8-1 at 12] When an ALJ determines at step four that a claimant cannot perform his or her past work, the burden shifts to the Commissioner on the fifth step and requires the Commissioner to establish that the claimant can perform other work. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 571 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). This is generally established through the testimony of a vocational expert. The ALJ will pose questions to the vocational expert that describe a "hypothetical individual" who has the same abilities and limitations as the actual claimant. *Lancaster*, 228 F. App'x at 571. The vocational expert then answers whether

9

there are jobs existing within the national economy that the hypothetical individual could perform. *Id.* "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence" at the fifth step, "the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d at 239, 241 (6th Cir. 2002)). If the ALJ fails to accurately describe the claimant's impairments, that is a "defect which is fatal to the vocational expert's testimony and the ALJ's reliance upon it." *Lancaster*, 228 F. App'x at 573. In such case, the ALJ's conclusion at step five would not be supported by substantial evidence. *Lancaster*, 228 F. App'x at 572; *Ealy*, 594 F.3d at 517.

Trent asserts that the ALJ erred because he did not include Dr. Culbertson's sitting, standing, and walking limitations in his question to the vocational expert. [*Id.*] Dr. Culbertson was a state agency consulting physician who reviewed Trent's medical records in February 2017. [AR 207-10] He found Trent could stand and/or walk and sit for "about 6 hours in an 8-hour workday." [AR 207] The ALJ considered Dr. Culbertson's opinion and gave it "significant weight" because "the evidence available at the time supports at least this much limitation." [AR 132] However, the ALJ went on to explain that "*more limitations are warranted* and afforded the claimant in the residual functional capacity" than those prescribed by Dr. Culbertson. [*Id.* (emphasis added)] The ALJ then found Trent could "perform sedentary work as defined in 20 CFR 404.1567(a)." [AR 128] A "sedentary job" is defined as one that involves only "occasional" walking and standing, 20 C.F.R. § 404.1567(a), and "occasionally" means "occurring from very little up to one-third of the time" and "should generally total no more than about 2 hours of an 8-hour workday." Soc. Sec. Rul. 83-10, 1983 WL 31251 at *5.

The ALJ did not need to incorporate Dr. Culbertson's assessment that Trent could stand or walk for up to 6 hours in an 8-hour workday because the ALJ determined Trent was only capable of sedentary work (i.e., about 2 hours of standing or walking in an 8-hour workday). In the questions posed to the vocational expert, the ALJ described a "hypothetical individual" who could only perform at the "sedentary exertional level," among other limitations and abilities [AR 170-71] Therefore, the ALJ accurately described Trent's physical abilities and limitations to the vocational expert. Trent's argument otherwise is without merit.

Nevertheless, the Court finds that the ALJ erred by failing to consider in any apparent way relevant evidence in the record regarding Trent's anxiety and depression and failed to adequately incorporate these non-severe mental impairments during later steps in the sequential process. Therefore, based on the Court's review of the ALJ's decision and the record, the Court finds that it was not made in accordance with proper legal standards. *Rabbers*, 582 F.3d at 651. The Court will grant Plaintiff's Motion for Summary Judgment and remand the case for further proceedings consistent with this opinion.

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment [**R. 8**] is **GRANTED.**

2. The Commissioner's Motion for Summary Judgment [**R. 10**] is **DENIED.**

3. The decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions to consider all the evidence in the record concerning Plaintiff's mental impairments when determining his residual functional capacity and to adequately explain the reasons given for affording the treating physician's opinion little weight.

4. A judgment will be entered contemporaneously with this Order.

This the 19th day of January, 2021.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY